TODD BLANCHE
Deputy Attorney General of the United States
SIGAL CHATTAH
First Assistant United States Attorney
District of Nevada
Nevada Bar Number 8264
DANIEL J. COWHIG
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
702-388-6336
daniel.cowhig@usdoj.gov
*Attorneys for the United States of America*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     vs.<br><br>CELSO DANIEL RUIZ,<br><br>          Defendant. | Case No. 2:23-cr-228-RFB-NJK<br><br>United States' Response to Defendant Celso Daniel Ruiz's Sentencing Memorandum [ECF No. 41] |

CERTIFICATION: This response is timely filed under LCR 32-1(d).

The United States of America, through the First Assistant United States Attorney, Sigal Chattah, and the undersigned Assistant United States Attorney, Daniel J. Cowhig, submits this response to the defense sentencing memorandum as to defendant Celso Daniel Ruiz.

Consistent with the terms of the plea agreement, as limited by the statutory maximum sentence of imprisonment, the United States respectfully requests this Honorable Court

1

sentence defendant to a 60-month term of custody followed by a 3-year term of supervised release on the conditions recommended by the United States Probation Office (USPO).[1]

## I.  Factual Context

Defendant Ruiz is pending sentencing after having pleaded guilty pursuant to a Plea Agreement to Count One of the indictment in this case, which charges defendant Ruiz with Engaging in the Business of Dealing Firearms Without a License under 18 U.S.C. § 922(a)(1)(A), 923(a), and 924(a)(1)(D). ECF No. 1 (Indictment); ECF No. 33 (Minutes); ECF No. 34 (Plea Agreement).

Defendant Ruiz stipulated to a summary of facts in the plea agreement. ECF No. 34 at 5:10-6:2. In that factual stipulation, defendant Ruiz admitted that:

> From December 2020 through January 17, 2023, in the District of Nevada, Celso Ruiz purchased at least 145 of the same or similar-type firearms. Ruiz crossed the U.S./Mexico border shortly after purchasing many of the firearms. Eighteen firearms purchased by Ruiz were subsequently registered by individuals through various parts of Mexico. Ruiz devoted time, attention, and labor to repeatedly purchasing a large quantity of firearms so that he could later resell those firearms to others for a profit. Furthermore, Ruiz knew that many of the firearms he purchased would be transferred out of the United States.
> During the above-referenced timeframe, Ruiz did not have a license to sell firearms or a license to export firearms from the U.S. to Mexico.

*Id.*

---

[1] Presentence Investigation Report (PSR), ECF No. 37, at pp. 22-25. As of the date of this filing, defendant has not noticed any opposition to any of the recommended conditions of supervision. *See* ECF No. 41.

## II. Parties' Stipulated Offense Level Computations

Under the plea agreement, the parties stipulated to the following offense level computation, reserving for argument whether a further 5-level specific offense characteristic enhancement under USSG § 2K2.1(b)(5)(C) should also apply:

| | |
|---|---|
| Base Offense Level, USSG § 2K2.1(a)(7): | 12 |
| Offense Characteristics: 100-199 firearms USSG § 2K2.1(b)(1)(D) | +8 |
| Offense Characteristics USSG § 2K2.1(b)(6)(A): | +4 |
| Total Offense Level: | 24 |

*Id.* at 6:18-21. As set out in the plea agreement,

> [t]he government asserts that there is a 5-level enhancement via USSG § 2K2.1(b)(5)(C) because Ruiz purchased at least two firearms with the intent to transfer those firearms to individuals that conspired or attempted to conspire with him in the purchase and transfer of those firearms. Based on this enhancement, the government believes that the Adjusted Offense Level is 29. Ruiz reserves the right to contest this 5-level enhancement.

*Id.* at 6:22-7:3. The language that appeared in section 2K2.1(b)(5)(C) of the 2024 Guidelines Manual was renumbered § 2K2.1(b)(6)(C) without change in the 2025 manual. Under USSG § 2K2.1(b)(6)(C), if the defendant

> (C) (i) transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who (I) had a prior conviction for a crime of violence, controlled substance offense, or misdemeanor crime of domestic violence; (II) was under a criminal justice sentence at the time of the offense; or (III) intended to use or dispose of the firearms unlawfully; (ii) attempted or conspired to commit the conduct described in clause (i); or (iii) received two or more firearms as a result of inducing the conduct described in clause (i), increase by 5 levels.

USSG § 2K2.1(b)(6)(C). While defendant Ruiz asserts in his sentencing memorandum that this enhancement is not "not supported by the evidence offered in this case," ECF No. 41 at 3:7-8, the enhancement is in fact set out by the facts defendant Ruiz admitted in the plea agreement.[2]

Defendant Ruiz pleaded guilty to Count One Engaging in the Business of Dealing Firearms Without a License under 18 U.S.C. § 922(a)(1)(A), 923(a), and 924(a)(1)(D). Defendant Ruiz admitted that when he committed the offense of Dealing Firearms Without a License, his offense involved between 100 and 199 firearms. ECF No. 34 at 5:19; *id*. at 6:19; USSG § 2K2.1(b)(1)(D). Defendant Ruiz admitted that he "crossed the U.S./Mexico border shortly after purchasing many of the firearms," and that "[e]ighteen firearms purchased by Ruiz were subsequently registered by individuals through various parts of Mexico." ECF No. 34 at 5:19-21.

Defendant Ruiz admitted that when he committed the offense of Dealing Firearms Without a License, he "possessed … firearm[s] … while leaving or attempting to leave the United States, or possessed or transferred … firearm[s] …  with knowledge, intent, or reason to believe that [they] would be transported out of the United States." ECF No. 34 at 5:23-24; *id*. at 6:20; USSG § 2K2.1(b)(6)(A).

Defendant Ruiz admitted that he "did not have a license to sell firearms or a license to export firearms from the U.S. to Mexico." ECF No. 34 at 6:1-2; *id*. at 3:16.

These admitted facts plainly establish that USSG § 2K2.1(b)(6)(C) applies to defendant Ruiz's admitted conduct.

---

[2] More specifically, defendant Ruiz asserts that because "[i]t is not alleged that any of the firearms in this case were found to be in the possession of individuals who: '(1) had a prior conviction for a crime of violence, controlled substance offense, or misdemeanor crime of domestic violence; (2) was under a criminal justice sentence at the time of the offense; or (3) intended to use or dispose of the firearms unlawfully,' the enhancement should not apply. That assertion omits operative language from the guideline, altering its meaning.

When defendant Ruiz engaged in unlicensed dealing "kn[owing] that many of the firearms he purchased would be transferred out of the United States," ECF No. 34 at 5:23-24, he unavoidably "(i) transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who … intended to … dispose of the firearms unlawfully [or] (ii) attempted or conspired to commit the conduct described in clause (i)," USSG § 2K2.1(b)(6)(C), because defendant Ruiz and his conspirators were necessarily jointly engaged in exporting firearms from the United States without license in violation of 18 U.S.C. § 922(a)(1)(A); straw purchasing of firearms in violation of 18 U.S.C § 922(a)(6); and travelling into or among United States with intent to violate 18 U.S.C. § 922(a)(1)(A) in violation of 18 U.S.C. § 924(n).

By dealing firearms without a license, defendant Ruiz was purposely and unavoidably moving firearms outside the extensive statutory system of controls designed to keep firearms out of the hands of persons who may not lawfully possess firearms, "thwart[ing] application of essentially all of the firearms law's requirements." *Abramski v. United States*, 573 U.S. 169, 188–89 (2014) (Finding that "no piece of information is more important under federal firearms law than the identity of a gun's purchaser").

### III.  Parties' Positions Regarding Sentence

Under the plea agreement,

> [t]he USAO will recommend that the district court sentence defendant at the low end of the advisory guideline range as determined by the district court.
> Defendant may argue for a downward variance pursuant to 18 U.S.C. § 3553.

ECF No. 34 at 8:21-23.

Offense Level 29 in Criminal History Category I corresponds to an advisory sentencing range of 63-78 months. USSG Ch. 5, Pt. A, Sentencing Table. The statutory maximum

custodial sentence the district court can impose for a violation of 18 U.S.C. §§ 922(a)(1)(A) and 923(a) and 924(a)(1)(D) as charged in Count 1 is 5 years, that is, 60 months. 18 U.S.C. § 924(a)(1)(D); ECF No. 34 at 3:19-24.

Consistent with the terms of the plea agreement, the United States requests this Honorable Court sentence defendant Ruiz 60-month custodial sentence followed by a 3-year term of supervised release.

### IV.  United States' Sentencing Recommendation and Rationale

The United States respectfully requests this Honorable Court sentence defendant to a 60-month term of custody with a 3-year term of supervised release on the conditions recommended by the United States Probation Office (USPO). Although defendant Ruiz profited substantially from the offense,[3] he does not appear to presently possess the resources to pay a punitive fine. PSR at para. 76.

Defendant Ruiz urges the court make a massive downward departure from the applicable guidelines range, asserting that such a departure is necessary "to avoid unwarranted sentencing disparities." ECF No. 41 at 10:14-19. In so doing, defendant Ruiz presents a laundry-list of cases where a defendant was sentenced to probation yet makes no meaningful comparison of the facts relevant to the sentencing factors. *See* ECF No. 41 at 12:1-13:4.

The United States Sentencing Commission derived the guidelines from historical data and continually subjects the guidelines to ongoing empirical study and analysis. *See* U.S. SENT'G COMM'N GUIDELINES MANUAL § 1A3 p.s. ("the guidelines represent an approach that begins with, and builds upon, empirical data.") (Guidelines Manual). Particularly pertinent to defendant Ruiz is the Commission's 2019 study *Recidivism Among Federal Firearms*

---

[3] Financial records show that defendant Ruiz made cash deposits totaling $121,983.57 between January 2021 and August 2023. PSR at para. 10.

*Offenders*. USSC (June 2019) (*Firearms Recidivism Study*), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190627_Recidivism_Firearms.pdf.

As the Guidelines Manual explains, in order "to protect the public from further crimes of the particular offender, the likelihood of recidivism and future criminal behavior must be considered." USSG Ch.4, Pt. A, intro. comment. To that end, the Manual observes that "[r]epeated criminal behavior," like that of defendant Ruiz, "is an indicator of a limited likelihood of successful rehabilitation." *Id*. Defendant Ruiz not only engaged in an extensive pattern of criminal conduct inherent in dealing more than 145 firearms without a license and trafficking many of those firearms to Mexico, but he had previously been convicted of a drug trafficking felony in Mexico. PSR at para. 31.

Empirical data shows that firearms offenders recidivate at a higher rate than all other classes of offenders as measured by rearrest, reincarceration, and reconviction. The *Firearms Recidivism Study* found that as "measured by rearrest, firearms offenders recidivated at a higher rate than non-firearms offenders by a margin of over 21 percentage points." *Firearms Recidivism Study* at 17. More, the study found that "[f]irearms offenders recidivated … sooner than non-firearms offenders." *Id*. "Firearms offenders have higher recidivism rates than non-firearms offenders in every [Criminal History Category]." Id. at 19.

Significantly, the *Firearms Recidivism Study* revealed that "[f]irearms offenders recidivated at a higher rate than non-firearms offenders regardless of the length of sentence imposed." *Id*. at 21. "However, the association between sentence length and rate of recidivism among both firearms and non-firearms offenders is less clear." *Id*. Only among firearms offenders sentenced to 10 years or more confinement, the guideline applicable to defendant Ruiz's criminal conduct, did the recidivism rate decline. *Id*.

> Nearly two-thirds of firearms offenders (64.2%) sentenced to the shortest terms of imprisonment (less than 24 months) recidivated. The recidivism rates increased to over 70 percent for firearms offenders who received a sentence between 24 and 59 months (73.9%) and those who received a sentence between 60 and 119 months (72.1%). For firearms offenders who received a sentence of 120 months or greater, the recidivism rate drops to 55.8 percent. Longer sentences result in older ages at release, which may be one factor contributing to the lower recidivism rate for this group.

*Id.*

After computing and applying the Guidelines, "the court shall then consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole." USSG § 1B1.1, comment. (Application Instructions); see 18 U.S.C. § 3553(a).

"The nature and circumstances of the offense" committed by defendant Ruiz, the movement of at least 145 firearms into illicit commerce outside the extensive statutory controls established by the political branches, pose a substantial danger to society. 18 U.S.C. § 3553(a)(1). Unlike drugs, firearms are not consumable. Firearms are durable. The danger firearms outside legitimate controls present will similarly endure. "[T]he history and characteristics of the defendant," who had previously been convicted in Mexico of a felony drug trafficking offense and served a custodial sentence in both Mexico and the United States, do not bode well for defendant Ruiz's future compliance with the law. *Id.*

Given the risks generated to society by defendant Ruiz's trafficking of at least 145 firearms, a substantial custodial sentence is needed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Similarly, a substantial sentence is needed "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Given that defendant Ruiz had previously been convicted of a drug trafficking felony in Mexico yet chose to reengage in an extensive course of

criminal activity, a substantial sentence is needed "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).

Defendant Ruiz also seeks a downward departure based upon "the impact incarceration would have on [the] defendant's family." ECF No. 41 at 13:14-15. While defendant Ruiz incudes a point citation to *Booker* to support his argument that the consequences of his conduct would have on his family warrant such a radical downward departure, *id.*, that citation in fact points to the holding that a court must "tailor the sentence in light of other statutory concerns," referencing specifically the considerations set out in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 245 (2005). Defendant Ruiz does not explain which of the section 3553(a) factors would support a 60-month downward departure. There is none.

"The Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." USSG § 1A1(b) p.s. "When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." *Id.* None of the facts or factors Ruiz urges as the basis for a departure differs significantly from the norm.

Defendant Ruiz moved at least 145 firearms into illicit commerce. The community was endangered many times over by defendant Ruiz's criminal acts. Uncontrolled, unlicensed dealing of firearms has serious and lasting follow-on effects as the trafficked firearms circulate in the community outside legitimate control.

The sentencing guidelines, which the Supreme Court has recognized as "helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary," *Booker*, 543 U.S. at 264–65, recommend a custodial sentence of 63

to 78 months. A custodial sentence of 60 months, the statutory maximum for the offense of conviction, is appropriate here to recognize all applicable sentencing factors.

Taking all of the appropriate factors into account, a 60-month term of custody is necessary "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). A 60-month term of custody would also "afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(C), and be sufficient to "protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(D).

Given the extent and effects of defendant Ruiz's conduct, a 3-year term of supervised release on the conditions recommended by the USPO is necessary to serve the purposes of supervision.

The United States respectfully requests to be permitted to supplement this filing should new circumstances require.

Respectfully submitted this November 10, 2025.

SIGAL CHATTAH
First Assistant United States Attorney


*//s// Daniel J Cowhig*
DANIEL J. COWHIG
Assistant United States Attorney